IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

CP ANCHORAGE HOTEL 2, LLC,                              PLAINTIFF

      vs.                                    Case No. 2:14-cv-00136-WOB-CJS

ONSET FINANCIAL, INC.                                   DEFENDANT

## ANSWER AND COUNTERCLAIM

Comes now the Defendant, Onset Financial, Inc. (“**Onset**”), by counsel, and hereby responds to the allegations in the Complaint of CP Anchorage Hotel 2, LLC (“**CP Anchorage**”) as follows:

### FIRST AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief contained therein, fails to state a claim for which relief may properly be granted.

### SECOND AFFIRMATIVE DEFENSE

Onset answers the specifically numbered allegations in the Complaint as follows:

1.    Onset lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 1 of the Complaint and therefore denies the same.

2.    Onset lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 2 of the Complaint and therefore denies the same.

3.    Admit.

4.    Admit.

5.      Onset admits that it entered into the Lease, which has a Base Period of 24 months, and Onset refers to the Lease for its specific terms.

6.      Onset admits the first sentence of the paragraph 6 of the Complaint and refers to the Lease for its specific terms.   Onset denies all denies all remaining allegations contained in paragraph 6 of the Complaint.

7.      Deny.

8.      Onset admits the allegations contained in the first sentence of paragraph 8 of the Complaint.   Onset denies the remaining allegations except admits that it responded to CP Anchorage's election to purchase the leased equipment with an offer to sell the equipment for $153,637.12.

9.      Deny.

10.      The allegations contained in paragraph 10 assert legal conclusions which do not call for an admission or denial.   To the extent such allegations might be construed to assert allegations of fact, the same are denied.

11.      Deny.   The parties agreed that "any suit or other proceeding brought by either party to enforce or construe this Lease … or to determine matters relating to the property or the relationship between the parties hereto shall be brought only in the state or federal courts in the State of Utah."   (Master Lease, ¶ 20.e.)

12.      The allegations contained in paragraph 12 of the Complaint assert legal conclusions which do not call for an admission or denial.   To the extent such allegations might be construed to assert allegations of fact, the same are denied.

13.      Onset admits the allegations contained in the first sentence of the paragraph 13 of the Complaint.   Onset denies the allegations contained in the second

sentence of paragraph 13 except admits that the basic Lease documents were prepared by Onset and that certain provisions were specifically negotiated with CP Anchorage.

14.     Onsets admits that the Lease contains the quoted language and refers to the Lease for its specific terms.

15.     Onset admits that Anchorage Hotel paid a "security deposit" in the amount of $38,550.62 required by the Lease and related Security Agreement (Cash Deposit), and Onset refers to the Lease and Security Agreement for their specific terms.

16.     Onset admits the allegations contained in paragraph 16 of the Complaint and refers to the Lease for its specific terms.

17.     Onset admits the allegations contained in paragraph 17 of the Complaint and refers to the Lease for its specific terms.

18.     Onsets admits that the Lease contains the quoted language (which is incomplete) and refers to the Lease for its specific terms.

19.     Deny.

20.     Onsets admits that Mr. Broumas was and is a salesman at Onset, that he contacted Chris Ballard in connection with the parties entering into the Lease, and that he (with others) was involved in negotiating the terms of the Lease attached to the Complaint.  Onset further admits that Mr. Broumas was involved in negotiating other leases with Chris Ballad.  Onset denies all other allegations contained in paragraph 20 of the Complaint.

21.     Deny.

22.     Onset admits that Mr. Broumas informed Mr. Ballad that Onset would not agree in advance to a purchase price for the leased equipment at the end of the Base

Period.  Onset further admits that Mr. Broumas informed Mr. Ballard that Onset often obtains underwriting of its leases based on estimating a possible equipment purchase price at the end of the base period of approximately 10% of the original cost of the equipment.   Onset denies all other allegations contained in paragraph 22 of the Complaint.

23.    Deny.

24.    Deny.

25.    Admit.

26.    Onset admits that on May 15, 2014, it offered to accept $153,637.12 plus any applicable taxes and fees for the leased equipment at the end of the Base Period. Onset denies the remaining allegations contained in paragraph 26 of the Complaint.

27.    With regard to the allegations contained in paragraph 27 of the Complaint, Onset admits that counsel for CP Anchorage wrote to Onset and that Onset replied. Onset further admits that its reply letter contains the quoted language (though there are errors in the quotation) and refers to the two referenced letters for their specific contents.  Onset denies all remaining allegations contained in paragraph 27.

28.    Deny.  Specifically, the referenced letter states in part: "In your letter you made a series of allegations against Onset, all of which are incorrect."

29.    Deny.

30.    Onset incorporates all of its prior responses as set forth herein.

31.    Deny.

32.    Deny.

33.    Deny.

34.    Deny.

35.    Onset denies all allegations contained in paragraph 35 of the Complaint, including that it made the alleged misrepresentation.

36.    Deny.

37.    Deny.

38.    Deny.

39.    Onset incorporates all of its prior responses as set forth herein.

40.    The allegations contained in paragraph 40 of the Complaint assert legal conclusions which do not call for an admission or denial.  To the extent such allegations might be construed to assert allegations of fact, the same are denied.

41.    Onset incorporates all of its prior responses as set forth herein.

42.    The allegations contained in paragraph 42 assert legal conclusions which do not call for an admission or denial.

43.    Deny.

44.    Deny.

45.    Deny.

46.    Onset incorporates all of its prior responses as set forth herein.

47.    The allegations contained in paragraph 47 of the Complaint assert legal conclusions which do not call for an admission or denial.  To the extent such allegations might be construed to assert allegations of fact, the same are denied except Onset admits that the filing of the Complaint creates a controversy between the parties.

48.    The allegations contained in paragraph 48 of the Complaint assert legal conclusions which do not call for an admission or denial.  To the extent such allegations

might be construed to assert allegations of fact, the same are denied except that Onset understands that CP Anchorage asserts that it is entitled to purchase the equipment subject to the Lease for 10% of its original cost.

49.     The allegations contained in paragraph 49 of the Complaint assert legal conclusions which do not call for an admission or denial.  To the extent such allegations might be construed to assert allegations of fact, the same are denied.

50.     Deny.

51.     Deny.

## THIRD AFFIRMATIVE DEFENSE

Onset denies each and every allegation in the Complaint except as specifically admitted in answer to each paragraph thereof, as set forth above.

## FOURTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, is barred because this Court lacks personal jurisdiction over Onset.

## FIFTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, is barred because venue is improper in this District.

## SIXTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, are barred by the statute of frauds.

## SEVENTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, is barred by the economic loss doctrine.

## EIGHTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief for fraud set forth therein, are barred to the extent that Plaintiff has failed to plead fraud with specificity.

## NINTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, is barred by the doctrine of waiver.

## TENTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, is barred in whole or in part because Onset made no misrepresentation to Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, is barred because Plaintiff did not reasonably rely on any alleged misrepresentation by Onset.

## TWELFTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, is barred because Plaintiff has not been damaged by Onset.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, is barred because Onset had no intent to and did not commit fraud against Plaintiff.

## FOURTEENTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, is barred because Plaintiff assumed the risk of any damages complained of in the Complaint, if any.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, is barred because Plaintiff failed, refused and/or neglected to mitigate or avoid the damages complained of in the Complaint, if any.

## SIXTEENTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, is barred in whole or in part by the doctrine of unclean hands.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The Complaint, and each and every claim for relief set forth therein, is barred by Plaintiff's material breaches of the Lease.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Complaint, and each and every purported claim for relief set forth therein, is barred in whole or in part, by the integration provision of the Lease and/or the parole evidence rule.

**WHEREFORE**, Defendant Onset requests that the Court deny the relief requested by the Plaintiff and award Onset its costs and reasonable attorney fees incurred in this action.

## <u>COUNTERCLAIM</u>

Comes now the Counterclaimant, Onset Financial, Inc. ("**Onset**"), and alleges the following claims for relief against the Counterclaim Defendant, CP Anchorage Hotel 2, LLC ("**CP Anchorage**"):

## PARTIES, JURISDICTION AND VENUE

1.     Onset is a corporation organized under the laws of the State of Utah, having its principal place of business in Salt Lake County, Utah.

2.     CP Anchorage is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Anchorage, Alaska.

3.     Upon information and belief, the sole member of CP Anchorage is Columbia Sussex Corporation, a Kentucky corporation, which has its principal place of business in Kenton County, Commonwealth of Kentucky.

4.     The Lease and related contracts which are the subject of this Counterclaim were entered into in Salt Lake County, State of Utah.

5.     CP Anchorage's Complaint initiating this case was filed in Kentucky state court and, pursuant to 28 U.S.C §§ 1332 and 1441, properly removed to the this Court on the grounds that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and fees, and that the citizenship of Onset and of CP Anchorage are of different states.

6.     Onset's Counterclaim exceeds $75,000, exclusive of interest, costs and fees.

7.     Venue is not proper in this Court.  Consequently, on August 6, 2014, Defendant and Counterclaimant Onset Financial filed its Motion for Transfer of Venue to the United States District Court for the District of Utah.  (Dkt #11)  That motion is pending.

## GENERAL ALLEGATIONS

8.      Onset re-alleges and incorporates herein by reference the allegations of the foregoing paragraphs.

9.      On or about March 6, 2012, CP Anchorage and Onset entered into: (i) *Master Lease Agreement No. OF10445098*, dated March 6, 2012 (the "**Master Lease**"); and (ii) *Master Progress Payment Agreement*, dated March 6, 2012, ("**MPPA**").  True and correct copies of the Master Lease and the MPPA are attached hereto as **Exhibit A** and **Exhibit B**, respectively, and incorporated herein by reference.

10.      On or about March 6, 2012, CP Anchorage and Onset entered into: (i) *Lease Schedule No. 001 to Master Lease Agreement No. OF10445098*, dated March 6, 2012, later amended by *Amendment No. 1 to Lease Schedule No. 001 to Master Lease Agreement No. OF10445098*, dated May 9, 2012; (ii) a *Schedule B Stipulated Loss Schedule Dated March 6, 2012 to Lease Schedule No. 001 Dated March 6, 2012 to Master Lease Agreement No. OF10445098,* later amended by *Schedule B Stipulated Loss Schedule Dated May 9, 2012 to Lease Schedule 001 Dated March 6, 2012 to Master Lease Agreement OF10445098,* dated May 9, 2012 (collectively "**Schedule 001**"). True and correct copies of the documents constituting Schedule 001 are attached hereto as **Exhibit C** and incorporated herein by reference.

11.      Schedule 001 incorporates the Master Lease and MPPA.  Schedule 001, with its related documentation and the documents incorporated therein by reference, is hereafter referred to as the "**Lease.**"

10

12.   Under the Lease, Onset agreed to lease to CP Anchorage, and CP Anchorage agreed to lease from Onset, certain equipment (primarily televisions) (the "**Lease Equipment**").

13.   The Lease requires CP Anchorage to make quarterly rental payments to Lessor, Onset, in the amount of $10,974.08, plus sale/use and property tax, for use of the Lease Equipment during the term of the Lease.

14.   To secure CP Anchorage's obligations under the Lease, CP Anchorage executed and delivered to Onset a *Security Agreement (Cash Deposit),* dated March 6, 2012, granting a security interest in a cash deposit in the amount of $38,550.62.

15.   CP Anchorage paid Onset the $38,550.62 security deposit.

16.   CP Anchorage also paid Onset a $10,974.08 rental deposit.

17.   The Lease provides that the Lease Equipment is and shall at all times remain the property of Lessor.

**FIRST CLAIM FOR RELIEF**
**(Breach of Lease)**

18.   Onset re-alleges and incorporates herein by reference the allegations of the foregoing paragraphs.

19.   The Lease is a binding and enforceable contract.

20.   Onset leased the Lease Equipment to CP Anchorage, and CP Anchorage leased such Equipment from Onset, pursuant to the Lease.

21.   The 24-month Base Period of the Lease began on July 1, 2012, with the first monthly rental payment of $10,974.08, plus applicable sale/use and property tax, being due on that date and subsequent payments in that amount becoming due each month thereafter for the Base Period of the Lease.

22.     Section 20.n. of the Master Lease provides in part:

At the maturity of the Base Period of any Lease, Lessee shall ... do one of the following: (1) purchase the Property for a price to be determined by Lessor and Lessee, (2) renew the Lease for twelve (12) additional months ..., or (3) terminate the Schedule and return the Property ...; provided, however, that for option (3) to apply ... Lessee must enter into a new Schedule with Lessor to lease Property which replaces the Property listed on the old Schedule. With respect to options (1) and (3), each party shall have the right in its absolute and sole discretion to accept or reject any terms of purchase or of any new Schedule, as applicable.  In the event Lessor and Lessee have not agreed to either option (1) or (3) by the maturity of the Base Period, ..., then option (2) shall apply at the maturity of the Base Period.  At the maturity of the renewal period provided for in option (2) above, the Lease shall continue in effect at the rate specified in the respective Schedule for successive periods of six (6) months each subject to termination at the maturity of any such successive six-month renewal period by either Lessor or Lessee giving to the other party at least thirty (30) days prior written notice of termination.

23.     The 24-month Base Period matured on June 30, 2014.

24.     CP Anchorage and Onset did not reach agreement under option (1) or (3) of Section 20.n. of the Lease before maturity of the Base Period on June 30, 2014.

25.     Pursuant to its terms, the Lease renewed for 18 months beginning July 1, 2014.

26.     CP Anchorage failed to pay to Onset, or its agents, the monthly rental payments required by the Lease for the months of July and August 2014, together with accrued late charges.

27.     CP Anchorage's failure to make monthly rental payments when due constitute events of default under the Lease.

28.     All conditions precedent having occurred, Onset is entitled to exercise all of its cumulative remedies upon default under the Lease.

29.     Among Onset's cumulative remedies under the Lease, Onset is entitled to: "declare immediately due and payable all amounts due or to become due hereunder for the full term of the Lease (including any renewal period or purchase options which Lessee has contracted to pay)."  (Master Lease section 19.h.)

30.     Pursuant to the terms of the Lease, Onset has declared due and payable, and there is now due and owing, $150,203.55, comprised of the following: (a) past due rental payments for the months of July and August 2014, in the amount of $21,948.16; (b) late charges for the missed rental payments in the amount of $2,194.81; (c) accelerated rental payments for the remaining 16 months of the renewal period under the Lease, in the amount of $175,585.28; and (d) less the deposits being held by Onset in the amount of $49,524.70 (collectively the "**Lease Damages**").

31.     Pursuant to the Lease, Onset is entitled to interest, both before and after judgment, on the Lease Damages at the contract rate of 18% per annum until paid in full.

32.     The Lease provides that Onset is entitled to recover all reasonable attorney fees and expenses incurred in enforcing its rights under the Lease.

<u>**SECOND CLAIM FOR RELIEF**</u>
**(Breach of Lease, alternative damages claim)**

33.     Onset re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 17 above.

34.     The Lease is a binding and enforceable contract.

35.     Onset leased the Lease Equipment to CP Anchorage, and CP Anchorage leased such Equipment from Onset, pursuant to the Lease.

36.     The 24-month Base Period of the Lease began on July 1, 2012, with the first monthly rental payment of $10,974.08, plus applicable sale/use and property tax, being due on that date and subsequent payments in that amount becoming due each month thereafter for the Base Period of the Lease.

37.     Section 20.n. of the Master Lease provides in part:

At the maturity of the Base Period of any Lease, Lessee shall ... do one of the following: (1) purchase the Property for a price to be determined by Lessor and Lessee, (2) renew the Lease for twelve (12) additional months ..., or (3) terminate the Schedule and return the Property ...; provided, however, that for option (3) to apply ... Lessee must enter into a new Schedule with Lessor to lease Property which replaces the Property listed on the old Schedule. With respect to options (1) and (3), each party shall have the right in its absolute and sole discretion to accept or reject any terms of purchase or of any new Schedule, as applicable.  In the event Lessor and Lessee have not agreed to either option (1) or (3) by the maturity of the Base Period, ..., then option (2) shall apply at the maturity of the Base Period.  At the maturity of the renewal period provided for in option (2) above, the Lease shall continue in effect at the rate specified in the respective Schedule for successive periods of six (6) months each subject to termination at the maturity of any such successive six-month renewal period by either Lessor or Lessee giving to the other party at least thirty (30) days prior written notice of termination.

38.     The 24-month Base Period matured on June 30, 2014.

39.     CP Anchorage and Onset did not reach agreement under option (1) or (3) of Section 20.n. of the Lease before maturity of the Base Period on June 30, 2014.

40.     Pursuant to its terms, the Lease renewed for 18 months beginning July 1, 2014.

41.     CP Anchorage failed to pay to Onset, or its agents, the monthly rental payments required by the Lease for the months of July and August 2014, together with accrued late charges.

14

42.   CP Anchorage's failure to make monthly rental payments when due constitute events of default under the Lease.

43.   All conditions precedent having occurred, Onset is entitled to exercise all of its cumulative remedies upon default under the Lease.

44.   Among Onset's cumulative remedies under the Lease, Onset is entitled to recover from CP Anchorage the applicable Stipulated Loss Value as set forth in the Lease.

45.   Section 19 of the Master Lease provides in part:

Upon the occurrence of any Event of Default and at any time thereafter, Lessor may with or without giving notice to Lessee and with or without cancelling the Lease, do any one or more of the following:

...

o. with or without terminating the Lease, and without waiving its right herein to repossess, recover, or sell the Property, recover the Stipulated Loss Value of the Property together with all accrued but unpaid late charges, interest, taxes, penalties, and any and all other sums due and owing under the Schedule as of the rent payment date immediately preceding the date of default. (Master Lease section 19.o.)

46.   The Stipulated Loss Schedule for Schedule 001 provides: "[i]n the event of default under the lease, Lessor may, in addition to all other remedies available to it under the Lease, recover the dollar amount listed under the Total Stipulated Loss Value indicated above as of the Monthly Rental payment date immediately preceding the date of the default ...."

47.   The Stipulated Loss Value associated with missing the first renewal payment (the July 1, 2014 payment) under the Lease, which CP Anchorage missed, is $89,951.46.

48.     As an alternative remedy under the Lease, Onset is entitled to recover from CP Anchorage damages in the amount of $89,951.46, less the deposits being held by Onset in the amount of $49,524.70.

49.     Pursuant to the Lease, Onset is entitled to interest, both before and after judgment, on any award of damages at the contract rate of 18% per annum until paid in full.

50.     The Lease provides that Onset is entitled to recover all reasonable attorney fees and legal expenses incurred in collecting these amounts.

**THIRD CLAIM FOR RELIEF**
**(Repossession of Equipment)**

51.     Onset re-alleges and incorporates herein by reference the allegations of the foregoing paragraphs.

52.     Onset owns the Lease Equipment.

53.     CP Anchorage has defaulted under the Lease and has no right to retain possession of the Lease Equipment.

54.     CP Anchorage is wrongfully detaining the Lease Equipment.

55.     In view of the persisting defaults, Onset is entitled to recover possession of the Lease Equipment and is entitled to the entry of judgment restoring Onset to quiet ownership of such Equipment, free and clear of all adverse interests (including the adverse interests, if any, of CP Anchorage and anyone claiming through CP Anchorage), but subject only to the rights of CP Anchorage, as Lessee, upon payment of damages.

56.     Pending entry of judgment, Onset is entitled to the issuance of a prejudgment writ of replevin to deliver possession of the Lease Equipment to Onset, the rightful owner.

## FOURTH CLAIM FOR RELIEF
### (Attorney's fees)

57.     Onset re-alleges and incorporates herein by reference the allegations of the foregoing paragraphs.

58.     The Lease provides that in the event of default, Onset is entitled to an award of its reasonable enforcement expenses, including reasonable attorney fees and costs, incurred in enforcing it remedies.

59.     Onset has found it necessary to retain counsel to defend CP Anchorage's claims and prosecute this action and otherwise to represent Onset's interests in enforcing its remedies under the Lease; and pursuant to applicable law, Onset is entitled to an award of reasonable attorney fees for such services.

60.     Onset is entitled to an award of costs incurred herein.

61.     Any judgment entered herein should provide for augmentation for reasonable post-judgment attorney fees and costs incurred in collecting and enforcing said judgment.

## PRAYER FOR RELIEF

WHEREFORE, Onset prays for judgment as follows:

1.      As to the First Claim for Relief against CP Anchorage for $150,203.55, plus interest thereon from August 1, 2014, until paid, both before and after judgment, at the

rate of 18% per annum, plus reasonable attorney fees and legal expenses incurred in enforcing Onset's rights under the Lease and in collecting the foregoing amount.

2.    As to the Second Claim for Relief against CP Anchorage, in the alternative for $40,426.76, plus interest thereon from August 1, 2014, until paid, both before and after judgment, at the rate of 18% per annum, plus reasonable attorney fees and legal expenses incurred in enforcing Onset's rights under the Lease and in collecting the foregoing amounts.

3.    As to the Third Claim for Relief against CP Anchorage, that Onset is entitled to the immediate possession and quiet ownership of the Lease Equipment; and that Onset is entitled to a writ of replevin to obtain immediate possession of the Lease Equipment.

4.    As to the Fourth Claim for Relief against CP Anchorage, that Onset is entitled to recover all reasonable attorney fees, costs, and other expenses incurred in enforcing its rights under the Lease; and that such judgment may be augmented for reasonable post-judgment attorney fees and costs incurred in collecting and enforcing said judgment.

5.    As to all Claims for Relief, for such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Richard G. Meyer                              /s/ Glenn R. Bronson
Dressman Benzinger LaVelle psc          Prince, Yeates & Geldzahler
207 Thomas More Parkway                     15 West South Temple, Suite 1700
Crestview Hills, KY 41017                       Salt Lake City, Utah 84101
Telephone: (859) 341-1881                      Telephone: (801) 524-1000
rmeyer@dbllaw.com                              grb@princeyeates.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of August, 2014 the within

Answer and Counterclaim was served by ECF filing on the following:

Scott R. Thomas
Matthew T. Cheeks
HEMMER DEFRANK, PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, KY  41017
sthomas@hemmerlaw.com

George M. Vinci, Jr.
Neal R. Troum
Johan A. Ashrafzadeh-Kian
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
gvinci@lawsgr.com
jkian@lawsgr.com

                          /s/ Richard G. Meyer

434048v1